UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-20679-Civ-MARTINEZ
MAGISTRATE JUDGE P.A. WHITE

GEORGE PARILLA                        :

    Petitioner,                       :

v.                                    :        REPORT OF
                                               MAGISTRATE JUDGE
MICHAEL D. CREWS,                     :

    Respondent.                       :

_____:

## I. Introduction

George L. Parilla, a state prisoner confined at Mayo Correctional Institution Annex in Mayo, Florida, filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, attacking the constitutionality of his convictions and sentences entered in Case F10-3450 in the Circuit Court of the Eleventh Judicial Circuit of Florida at Miami-Dade County.

The case has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of the petition (DE# 1), the Court has the respondent's response to an order to show cause with supporting exhibits contained in an Appendix (DE# 8).

## II. Claim

Petitioner raises the following grounds for relief:

1

**Claim 1**: Ineffective assistance of counsel for failing to challenge validity of injunction thus permitting the defendant to qualify for a harsher sentence to be imposed.

**Claim 2**: Petitioner's plea was involuntary based upon newly discovered evidence, namely, testimony of an eye witness.

(DE# 1).

### III. Factual and Procedural History

On January 18, 2011, Petitioner was charged by amended information in lower case number F10-3450, with aggravated stalking after entry of injunction for protection against domestic violence (count one), burglary with an assault or battery (count two), two counts of violation of an injunction against domestic violence (counts three and four), child abuse with no great bodily harm (count five), and misdemeanor criminal mischief (count six). (DE# 8, App. G). Petitioner proceeded to trial on January 18, 2011. On the second day of trial, January 19, 2011, after the State had presented testimony from two witnesses, Petitioner entered into a negotiated plea, pleading guilty to aggravated stalking (count one). (DE# 8, App H, I, M). In exchange, he was sentenced to five years in prison as a habitual felony offender followed by five years probation as an HFO and the State *nolle prossed* the remaining charges as well as a grand theft charge in F10-3448. (DE# 8, App. H, 4-5, 17; I). The written judgment and sentence were filed on February 9, 2011. (DE# 8, App. I).

On April 5, 2011, Petitioner filed a *pro se* motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, which was amended on April 19, 2011. (DE# 8, App. J, K). The amended motion asserted counsel was ineffective for

failing to challenge the validity of the injunction, thereby permitting defendant to qualify for a harsher sentence. (DE# 8, App. K). Specifically, Petitioner alleged that trial counsel was ineffective because he failed to challenge and investigate the permanent injunction issued against Petitioner on March 25, 2009 where the injunction was not supported by competent substantial evidence:

> Victim stated to the Court that she received phone calls from Defendant demanding to see his daughter. No competent substantial evidence was presented by the victim, via phone records, records of the billing for calls from a correctional facility also a recording provided by the institution should have been presented. Defendant next contact with the victim was May 2009, when he was informed by victim whether he wanted to see his daughter. Victim again filed charges on January 8, 2010 that the Defendant called her threatening her, again nothing was presented as competent substantial evidence to prove that this occurred.

(DE# 8, App. K).

The State filed its response on June 1, 2011, arguing that Petitioner was foreclosed from raising this claim by virtue of his voluntary plea wherein he stated that he was satisfied with the services of his attorney at the time of the plea and did not raise the claim at the time he entered into the plea, and attaching a copy of the transcript of the plea colloquy. (DE# 8, App. L).

On June 8, 2011, the trial court denied Petitioner's motion, largely adopting the State's response. (DE# 8, App. M).

On June 8, 2011, Petitioner filed a reply claiming that even if he knew that the domestic injunction was invalid, as a lay person, he did not know what was required in order to obtain an

3

injunction. (DE# 8, App. N).

On July 6, 2011, Petitioner filed a *pro se* notice of appeal in the Third District Court of Appeal, case number 3D11-1828, challenging the trial court's order denying his motion for post-conviction relief. (DE# 8, App. O). Petitioner filed his initial brief on August 17, 2011 arguing, "The lower court erred in denying Ground One of the Petitioner's 3.850: Defense counsel was ineffective for failing to challenge the validity of the Injunction Against Domestic Violence used as a basis for criminal charges." (DE# 8, App. P). Petitioner argued as follows that the injunction was entered against him based on the perjury of the victim:

> In the injunction, [the victim] claims that on February 14, 2007 the Appellant "punched her in the nose." However, an investigation by counsel would have revealed that [the victim] had dropped all charges regarding that incident, swearing that the Appellant did not strike her. Yet, approximately 18 months later, [the victim] swears, in her request for injunction, that the Appellant did "punch her in the nose." [The victim] also claims in her Petition for Injunction that during on February 1, 2009, the Appellant contacted her on her cellular phone. [The victim] states that at the time, the Appellant "was in jail." In truth, the Appellant was in the custody of the Florida Department of Corrections during February of 2009.

(DE# 8, App. P, 7-8).

The Third District per curiam affirmed on August 31, 2011 and the mandate issued on September 26, 2011. (DE# 8, App. Q, R).

On October 24, 2011, Petitioner filed a *pro se* motion for post-conviction relief. (DE# 8, App. S). In his motion, Petitioner argued that his plea was involuntary because the trial court failed to correctly inform him regarding the nature of the charges and

that his sentence as a habitual felony offender was improperly entered because the trial court accepted non-official records of prior convictions and did not obtain and consider a pre-sentence investigation report.  (DE# 8, App. S).

The trial court denied the motion on November 4, 2011. (DE# 8, App. T). As to the first claim, the trial court provided:

> The Defendant knew very well what he was charged with: Aggravated Stalking after the entry of an injunction for protection against domestic violence, in violation of § 784.048(4), Fla. Stats. Prior to trial, the court reviewed the charges and penalties with the Defendant (p. 4, plea colloquy). After hearing the opening statements of the State and his attorney, the testimony of the victim and arresting officer, he then chose to end the trial and plead guilty to the offense. Although the transcript of the plea colloquy does show that the court initially described count one as aggravated stalking "with a firearm restrained," the court properly advised the Defendant that he offense for which he was charged was a third degree felony (p. 4, 5 plea colloquy). Throughout the rest of the plea colloquy, there was no mention of a firearm and the Defendant was correctly advised that the charge was Aggravated Stalking (p. 6), he agreed to plead guilty to the charge of Aggravated Stalking (p. 7), and the court accepted his plea to the charge of Aggravated Stalking (p. 11). The judgment and sentence were for the charge of Aggravated Stalking (see Judgment and Sentence). The Defendant is not entitled to relief on this claim.

(DE# 8, App. T). The trial court denied the second claim since Petitioner waived his right to a PSI during the plea colloquy and stipulated to his prior record without the need to introduce certified copies or other evidence. (DE# 8, App. T). Petitioner filed a motion for rehearing on December 9, 2011, which was denied without a hearing on February 1, 2012. (DE# 8, App. U, V).

On February 27, 2012, Petitioner filed a *pro se* notice of appeal, in case number 3D12-522, appealing the trial court's denial of his motions for rehearing and post-conviction relief. (DE# 8, App. W). Petitioner filed an initial brief on or about March 7, 2012, in which he claimed, "Trial Court abused its discretion when it failed to allow Defendant one opportunity to amend a facially insufficient post-conviction motion." (DE# 8, App. X). The Third District per curiam affirmed on April 4, 2012. (DE# 8, App. Y). The mandate issued on April 30, 2012. (DE# 8, App. Z).

On May 2, 2012, Petitioner filed a *pro se* motion for post-conviction relief pursuant to Rule 3.850(b)(1), alleging newly discovered evidence based on the affidavit of eye witness Luis Lamadrid. (DE# 8, App. AA). Petitioner subsequently filed a notice of voluntary dismissal of this motion on May 24, 2012. (DE# 8, App. A, 14, 15; AA; AB). On October 12, 2012, the Rule 3.850 motion was denied and the notice of voluntary dismissal was stricken. (DE# 8, App. A, 9). Petitioner filed a motion for rehearing on October 25, 2012, asking the court to reconsider its denial of his motion in favor of a dismissal so that the court would not consider his future motions raising the same claims as successive, which was denied without a hearing on February 6. 2013. (DE# 8, App. AB, AC).

On July 12, 2012, Petitioner filed a *pro se* motion for post-conviction relief. (DE# 8, App. AD). In his motion, Petitioner claimed that his plea was involuntary based on newly discovered evidence and attached the affidavit of Luis Lamadrid. (DE# 8, App. AD). In particular, Petitioner asserted that, while serving his sentence on the instant offense at Dade County Correctional, he met Lamadrid who told him that he was present at the time of the offense and "did not hear or see the Defendant strike or assault Ms. Martinez in any way." (DE# 8, App. AD). Lamadrid provided that

6

he lived in an apartment directly in front of the victim Maria
Martinez's apartment, where Petitioner also lived, and had met them
before. (DE# 8, App. AD). In December 2009, Petitioner moved out of
the home. (DE# 8, App. AD). Although he no longer lived there,
Petitioner still possessed a key to the front gate and apartment
and was seen visiting the apartment four or five times during the
week to see the victim and the children. (DE# 8, App. AD).

On the date of the offense, February 2, 2010, at 7:00 and 7:30
a.m., Lamadrid observed Petitioner from his window picking up the
victim and the children and took them to school. (DE# 8, App. AD).
A few hours later, Lamadrid saw Petitioner, the victim, and
Petitioner's daughter return to the apartment. (DE# 8, App. AD).
Lamadrid stated that he usually kept his front door wide open
whenever he is home. (DE# 8, App. AD). On that day, Lamadrid had
his door open, and the victim did not close her apartment door
either, and thus Lamadrid was able to see and hear into the
victim's apartment. (DE# 8, App. AD). Lamadrid stated that he
overheard Petitioner and the victim get into an argument over the
living conditions of the apartment. (DE# 8, App. AD). Petitioner
told her that he was going to call "family and children," that he
was in a rush and did not want to argue about it, and that he would
wait for her in the car. (DE# 8, App. AD). The victim then met
Petitioner at the car with her daughter when the police arrived and
arrested Petitioner. (DE# 8, App. AD). Lamadrid stated that, "[A]t
no point during the time they were living together, after Mr.
Parilla moved out, nor the day of the arrest did I hear or see Mr.
Parilla strike or assault Ms. Martinez, or his daughter in any form
or fashion." (DE# 8, App. AD). He also stated, "I would never
imagine that during that whole time Ms. Martinez had an injunction
order on Mr. Parilla." (DE# 8, App. AD). He also provided that, a
few days later, "[o]n February 6th, 2010, I asked Ms. Martinez

7

about Mr. Parilla when she handed me the keys to her apartment as she was vacating the premises, she stated to me: 'at that time that she had exercised her efforts to have him put in jail.'" (DE# 8, App. AD).

Lamadrid met Petitioner at Dade Correctional Institution where Petitioner told him that he was in prison because "Ms. Martinez had lied and perjured herself in court." Lamadrid's affidavit concluded as follows:

> [M]y sworn statement contradicts the statement made by Ms. Martinez for the simple reason being that Ms. Martinez perjured herself in court by lying to the court. She did so out of anger at Mr. Parilla and used this opportunity to her advantage in order to place Mr. Parilla in a position of incarceration. I am also willing to testify to what I've seen and to what I've said in an open court of law. I swear all this that I have said can be proven by a polygraph test on my behalf to ensure to the court that Mr. Parilla is in fact innocent of said crime.

(DE# 8, App. AD).

The State filed a written response on January 24, 2013, arguing that the evidence set forth by Petitioner was known to him or could have been discovered with due diligence prior to taking a voluntary plea:

> Lamadrid claims that he lived across the hallway in an apartment building from the victim and the defendant, which is where the incident occurred. Lamadrid claims that he left his apartment door open the date of the incident and was able to see inside the victim's apartment where the incident is alleged to have taken place. In addition, Lamadrid claims in the affidavit that he had several conversations with the defendant before the incident and with the victim before and after the incident. If this was the case the Defendant would have

known that his neighbor was a witness or at least a possible witness to the incident.

(DE# 8, App. AE). The state further argued that by voluntarily entering the plea, Petitioner waived his right to have defense counsel investigate or put forward a defense. (DE# 8, App. AE). The State attached a copy of the transcript of the plea colloquy held on January 19, 2011. (DE# 8, App. AE).

On January 24, 2013, the trial court, adopting the State's response, summarily denied Petitioner's motion for post-conviction relief. (DE# 8, App. AF). First, the court denied relief because Petitioner freely and voluntarily entered into his guilty plea and stated on the record that he was satisfied with the investigative work of his Assistant Public Defender. (DE# 8, App. AF). In support thereof, the court incorporated and attached a prior order dated June 8, 2011 denying Petitioner's motion for post-conviction relief on a separate claim, that alleged that trial counsel was ineffective for failing to challenge the validity of his injunction against domestic violence thereby permitting him to qualify for a harsher sentence, entered by Judge Diane Ward and transcript of the plea colloquy. (DE# 8, App. AF). The court also rejected Petitioner's claim of newly discovered evidence on the basis that:

> The defendant could have obtained the new evidence with due diligence as the defendant knew Mr. Lamadrid was his neighbor and had spoken with Mr. Lamadrid prior to the incident. See Affidavit attached to Defendant's Motion. If this was the case the Defendant would have known that his neighbor was a witness or possibly a witness to the incident. There is no probability that this is newly discovered evidence as the defendant could have requested his attorney speak with his neighbor, Mr. Lamadrid prior to pleading guilty in the instant case.

(DE# 8, App. AF).[1]

On February 14, 2013, Petitioner filed a *pro se* notice of appeal, in case number 3D13-533, appealing the denial of his motion for post-conviction relief. (DE# 8, App. AG). The initial brief was filed on April 26, 2013. (DE# 8, App. AH). The State filed a response on November 12, 2013. (DE# 8, App. AI). Petitioner filed a reply on November 24, 2013. (DE# 8, App. AJ). The Third District per curiam affirmed on January 2, 2014. (DE# 8, App. AK). Petitioner filed a motion for rehearing with written opinion which was denied on February 5, 2014. (DE# 8, App. AL, AM). The mandate issued on February 21, 2014. (DE# 8, App. AN).

On September 9, 2013, Petitioner filed a *pro se* petition for writ of habeas corpus, asserting that "the trial court fundamentally erred by accepting Petitioner's guilty plea when there was no factual basis that would support aggravated stalking" since "there was no competent substantial evidence for the trial court to issue the injunction because (1) there was no evidence presented that two incidents of violence or stalking occurred and (2) the alleged act did not occur within 6 months of the filing of the petition." (DE# 8, App. AO). Petitioner also averred that "there was no factual basis to support Ms. Martinez's allegation that 'while Mr. Parilla was in prison he acquired her cell phone number and then started to continually call, threaten, and harass her.'" (DE# 8, App. AO). On September 18, 2013, Petitioner filed a motion to withdraw his habeas petition, which was granted on

---

[1] The Criminal Justice Information System (CJIS) online docket sheet indicates that a second judgment and sentence was entered on January 24, 2013. (DE# 8, App. A, 3). However, the entry appears to be in error. The state asserts that it obtained the documents associated with that entry, which were only copies of the aforementioned documents; the trial court's order denying the motion for post-conviction on January 24, 2013, the State's response, and Petitioner's motion filed on July 12, 2012.

October 21, 2013. (DE# 8, App. A, 2; AP).

No further state post-conviction motions or appeals have been filed. Based upon the date of mailing, in accordance with the Mailbox Rule, Petitioner filed the instant federal habeas petition on February 20, 2014. (DE# 1). The state filed a response. (DE# 8).

## IV. Threshold Issues- Timeliness, Exhaustion and Procedural Bar

The respondent correctly concedes that the instant petition has been timely filed. (DE# 8, p. 16). See 28 U.S.C. §2244(d). The respondent also expressly concedes that the grounds of the instant petition were effectively exhausted in the state courts; see 28 U.S.C. §2254(b)(1) and (b)(1)(A)(a state prisoner's habeas corpus petition "shall not be granted unless it appears that----the applicant has exhausted the remedies available in the courts of the State....").[2]

---

[2]

An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). A claim must be presented to the highest court of the state to satisfy the exhaustion of state court remedies requirement. O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Richardson v. Procunier, 762 F.2d 429, 430 (5th Cir. 1985); Carter v. Estelle, 677 F.2d 427, 443 (5th Cir. 1982), cert. denied, 460 U.S. 1056 (1983). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." Picard v. Connor, 404 U.S. 270, 277 (1971). Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it may be accomplished by the filing of a Rule 3.850 motion. Leonard v. Wainwright, 601 F.2d 807, 808 (5th Cir. 1979). Claims of ineffective assistance of trial counsel are generally not reviewable on direct appeal, but are properly raised in a motion for postconviction relief. See Kelley v. State, 486 So.2d 578, 585 (Fla.), cert. denied, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986). Exhaustion requires that the ineffective claim not only be raised in a Rule 3.850 motion, but the denial of the claim be presented on appeal. See Leonard v. Wainwright, 601 F.2d at 808. In the case of a challenge to a sentence, exhaustion is accomplished by the filing of a Rule 3.800 motion, and an appeal from its denial. See Caraballo v. State, 805 So.2d 882 (Fla. 2d DCA 2001). The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered before October 1, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

## V. <u>Standard of Review in §2254 Cases</u>

This federal habeas petition is governed by 28 U.S.C. §2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The AEDPA imposes a highly deferential standard for reviewing the state court rulings on the merits of constitutional claims raised by a petitioner. "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." <u>Harrington v. Richter</u>, 562 U.S. 86, ___, 131 S.Ct. 770, 786-87 (2011). <u>See also</u> <u>Greene v. Fisher</u>, 565 U.S. ___, ___, 132 S.Ct. 38, 43, 181 L.Ed.2d 336 (2011)(The purpose of AEDPA is "to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.")(internal quotation marks omitted).

In light of these principles, the AEDPA permits federal courts to grant habeas relief to a state court prisoner on any claim adjudicated on the merits in state court only if the state court's decision: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d); <u>see</u> <u>Lee v. Commissioner, Alabama Dept. of Corrections</u>, 726 F.3d 1172 (11th Cir. 2013).

Section 2254(d)(1) includes the phrase "clearly established Federal law." This phrase refers "to the holdings, as opposed to

the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). The phrase "contrary to" means that the state court decision "contradicts the United States Supreme Court on a settled question of law or holds differently than did that Court on a set of materially indistinguishable facts." Kimbrough v. Secretary, Florida Dept. of Corrections, 565 F.3d 796, 799 (11th Cir. 2009). See also Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002). An "unreasonable application" of clearly established federal law occurs when "the state court correctly identifies the governing legal principle ... but unreasonably applies it to the facts of the particular case." Bell v. Cone, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850 (2002). "An unreasonable application of federal law is different from an incorrect application of federal law," Williams, 529 U.S. at 410, 120 S.Ct. at 1522. "A state court's application of clearly established federal law or its determination of the facts is unreasonable only if no 'fairminded jurist' could agree with the state court's determination or conclusion." Holsey v. Warden, Ga. Diagnostic Prison, 694 F.3d 1230, 1257 (11th Cir. 2012)(quoting Harrington, 131 S.Ct. at 780)).

It is noted that the state court is not required to cite, or even have an awareness of, governing Supreme Court precedent, "so long as neither the reasoning nor the result of [its] decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); cf. Harrington, 131 S.Ct. at 785 (reconfirming that "§2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'" and entitled to deference); Mitchell v. Esparza, 540 U.S. 12, 16 (2003)("[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court

did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'")(*quoting* <u>Early v. Packer</u>, 537 U.S. at 7-8).

Thus, state court decisions are afforded a strong presumption of deference even when the state court adjudicates a petitioner's claim summarily—without an accompanying statement of reasons. <u>Harrington</u>, 131 S.Ct. at 780-84 (concluding that the summary nature of a state court's decision does not lessen the deference that it is due); <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1288 (11th Cir. 2011)(acknowledging the well-settled principle that summary affirmances are presumed adjudicated on the merits and warrant deference, *citing* <u>Harrington</u>, 131 S.Ct. at 784-85 and <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1254 (11th Cir. 2002)). <u>See also</u> <u>Renico v. Lett</u>, 559 U.S. 766, 773, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)("AEDPA ... imposes a highly deferential standard for evaluating state-court rulings ... and demands that state-court decisions be given the benefit of the doubt.")(citations and internal quotation marks omitted). Further, review under §2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v. Pinholster</u>, 563 U.S. ___, 131 S.Ct. 1388, 1398-1400, 179 L.Ed.2d 557 (2011)(holding new evidence introduced in federal habeas court has no bearing on Section 2254(d)(1) review).

## VI. <u>Discussion</u>

Under **claim 1**, Parilla alleges counsel was ineffective in failing to challenge validity of injunction thus permitting the defendant to qualify for a harsher sentence to be imposed. Parilla argues that had counsel performed this act, the trial court would

have found that the injunction entered against the defendant in violation of his due process rights and that the trial court lacked jurisdiction. Parilla raised this claim in his Rule 3.850 motion. (DE# 8, App. K).  The state filed a response wherein it argued that Parilla was prohibited from raising this claim because he stated when entering his guilty plea that he was satisfied with his attorney at the time of the plea hearing. (DE# 8, App. L). The trial court denied the defendant's postconviction motion, adopting the state's response. (DE# 8, App. M).  Parilla appealed. (DE# 8, App. O, P).  The Third DCA per curiam affirmed without written opinion. (DE# 8, App. Q, R).

Accepting a knowing and voluntary plea agreement forecloses collateral attack of claims of ineffectiveness or constitutional errors which occurred prior to the entry of the plea agreement. Boykin v. Alabama, 395 U. S. 238, (1969); United States v. Broce, 488 U.S. 563 (1989); Tollett v. Henderson, 411 U.S. 258 (1973); Wilson v. United States, 962 F.2d 996 (11th Cir. 1992); see also Krawczuk v. State, 634 So. 2d 1070, 1072 (Fla. 1994) (by pleading guilty without preserving the right to appeal, defendant waived the right to contest any pre-plea rulings); Holmes v. State, 650 So. 2d 1093 (Fla. 3d DCA 1995) (A guilty plea cuts off all issues arising before plea "except jurisdiction, legality of sentence imposed, failure of the state to abide by the plea agreement and the voluntary and intelligent nature of the plea.").

"If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." Stano v. Dugger, 921 F.2d 1125, 1141 (11th Cir. 1991) (en banc). "[T]he representations of the defendant . . . [at a plea proceeding] as well as any

15

findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

In Petitioner's case, the state trial court found that Petitioner entered into a voluntary plea as follows:

> The Court finds that you are intelligent and alert, that you are represented by competent counsel, with whom you're expressed satisfaction. And based on the Court having heard testimony today, I find that there's a factual basis for the plea.

(DE# 8, App. H, 11). In so finding, Petitioner stated that he understood the terms of the plea, that he was satisfied with the services provided by his attorney, and that he was giving up his right to trial by jury, his right to appeal, and that there would be no further work done in the case after that day. (DE# 8, App. H, 5-7). Therefore, the instant claim has been waived as a result of his knowing and voluntary plea.

In addition, Petitioner's claim is without merit.  The Strickland test in the context of a guilty plea is governed by Hill v. Lockhart, 474 U.S. 52 (1985); see also Grosvenor v. State, 874 So. 2d 1176, 1179 (Fla. 2004). The first prong is the same as set forth in Strickland, that a defendant must establish that counsel was deficient. Hill, 474 U.S. at 58-59. As to the second prong, a defendant must demonstrate a "reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial." Id. at 59. In determining whether a reasonable probability exists that the defendant would have insisted on going to trial:

> [A] court should consider the totality of the
> circumstances surrounding the plea, including such
> factors as whether a particular defense was likely to
> succeed at trial, the colloquy between the defendant and
> the trial court at the time of the plea, and the
> difference between the sentence imposed under the plea
> and the maximum possible sentence the defendant faced at
> trial.

Grosvenor, 874 So. 2d at 1181 (noting that the U.S. Supreme Court

in Roe v. Flores-Ortega, 528 U.S. 470 (2000) (comparing the failure

by counsel to advice defendant of his right to appeal to Hill's

failure to advise of an available defense and explaining that a

defendant need not demonstrate grounds for a meritorious appeal if

his right to appeal were reinstated, but would give weight to the

contention that the defendant would have appealed) reaffirmed

Hill's totality of the circumstances approach).


     As to the first prong under Strickland, trial counsel was not

deficient for failing to challenge the injunction at the time he

pled guilty to the aggravated stalking count. First, as mentioned

above, Petitioner's claim is insufficient on its face for since, by

pleading guilty, Petitioner admitted to all the facts alleged in

the information, and stipulated to a factual basis for the plea

including the fact that the underlying injunction was proper.

Labadie v. State, 840 So. 2d 332 (Fla. 5th DCA 2003).


     Trial counsel's alleged failure would not constitute deficient

performance because aggravated stalking required only that

Petitioner repeatedly followed or harassed the victim in violation

of a permanent injunction. §784.048(4), Fla. Stat. Therefore, all

that was needed to be proven with regard to the injunction as it

related to aggravated stalking was that an injunction was in place.

Here, Petitioner's conviction was based on a valid final judgment

of injunction. Petitioner cannot now contest the sufficiency of his

aggravated stalking charge by attacking the validity of the underlying injunction.

Moreover, any challenge to the injunction should have been raised at the hearing on the injunction or on appeal from the order imposing the permanent injunction. See also Reyes v. Reyes, 104 So. 3d 1206, 1208 (Fla. 5th DCA 2012) (citing Spaulding v. Estate of Frey, 666 So. 2d 935 (Fla. 5th DCA 1995) ("It is now too late to raise arguments that should have been raised at the contested hearing on [the] motion for temporary injunction or in a direct appeal from the order granting the motion for temporary injunction"). Section 741.30(6)(a), Florida Statutes requires that a trial court hold a full evidentiary hearing prior to entering a permanent injunction against domestic violence. Chanfrau v. Fernandez, 782 So. 2d 521 (Fla. 2d DCA 2001). Absent an allegation that an evidentiary hearing was not held or Petitioner was otherwise precluded from presenting evidence, Petitioner is precluded from attacking the sufficiency of the permanent injunction.

Moreover, the only manner in which a valid judgment could be modified or dissolved is if Petitioner alleged a change in circumstances. Petitioner cannot merely challenge the original issuance of the injunction. See Reyes v. Reyes, 104 So. 3d 1206 (Fla. 5th DCA 2012) (holding that father's motion to modify or dissolve domestic violence injunction was required to contain an allegation of changed circumstances, not merely a challenge to the original issuance of the injunction); Simonik v. Patterson, 752 So. 2d 692 (Fla. 3d DCA 2000) (respondent was not entitled to modification of injunction against repeat violence in absence of evidence that circumstances of parties had changed); see also Elias v. Steel, 940 So. 2d 495 (Fla. 3d DCA 2006) (holding son of

decedent, who was permanently enjoined from contacting pathologist in medical examiner's office who performed his father's autopsy, failed to show change in circumstances required to vacate injunction; son merely presented evidence and reargued merits of issuance of injunction, rather than presenting evidence of subsequent events that made terms of injunction inequitable); Alkhoury v. Alkhoury, 54 So. 3d 641, 642 (Fla. 1st DCA 2011) ("As a general rule, permanent injunctions, which remain indefinitely in effect, may be modified by a court of competent jurisdiction 'whenever changed circumstances make it equitable to do so.' " (quoting Hale v. Miracle Enters. Corp., 517 So.2d 102, 103 (Fla. 3d DCA 1987))). Because Petitioner failed to articulate any change in circumstances, in his motion in the state trial court or in the instant petition, trial counsel could not have been deficient for failing to challenge the injunction.

The final factor suggested by Grosvenor is the difference between the sentence imposed under the plea and the maximum possible sentence the defendant faced at trial. Petitioner was charged with aggravated stalking (count one), burglary with an assault or battery (count two), two counts of violation of an injunction against domestic violence (counts three and four), child abuse with no great bodily harm (count five), and misdemeanor criminal mischief (count six). (DE# 8, App. G; H, 4). By pleading guilty to one count of aggravated stalking, after two days of trial, he was sentenced to five years in prison as a habitual felony offender followed by five years probation as an HFO and the State *nolle prossed* the remaining charges as well as a grand theft charge in F10-3448. (DE# 8, App. H, 4-5, 17). Thus, according to the trial court's prior order, had Petitioner proceeded to trial, he faced at minimum, a life sentence as a violent career criminal. (DE# 8, App. H, 4; M). As such, based on the sheer disparity

between the sentence offered and the sentence he would have faced had he elected to proceed to trial, the difference between a 5-year sentence and a life sentence, it is not reasonably probable that, but for counsel's errors, he would not have pled guilty and would have proceeded to trial.

Therefore, under the totality of the circumstances, there is no basis for concluding that he would have gone to trial and not accepted the plea as its terms were set forth by the trial court. As such, there is no prejudice under <u>Hill</u>. Accordingly, because Petitioner cannot establish either prong under <u>Strickland</u>, Petitioner failed to meet his burden to establish that his trial counsel was ineffective.

Under **claim 2**, Petitioner asserts that his plea was involuntary based upon newly discovered evidence, namely, the affidavit of an eyewitness Luis Lamadrid. In support of his claim of newly discovered evidence, Petitioner attached the affidavit of Luis Lamadrid who asserted that he was the Petitioner's neighbor; was present in his apartment at the time of the offense and arrest; did not observe Petitioner strike or assault the victim or any children; and that after the offense, the victim told Lamadrid that she lied about the incident when she testified at Petitioner's trial.

Petitioner raised this claim in his July 12, 2012 Rule 3.850 motion. (DE# 8, App. AD).  The state filed a response wherein it argued that the evidence set forth by Petition was known to him or could have been discovered with due diligence prior to entering his plea. (DE# 8, App. AE).  Attaching the transcript of the change of plea hearing, the state further argued that Petitioner waived his right to have defense counsel investigate or put forward a defense

when he entered his plea. (Id.).   The trial court denied the defendant's postconviction motion, adopting the state's response. (DE# 8, App. AF).   Parilla appealed. (DE# 8, App. AG).   The Third DCA per curiam affirmed without written opinion. (DE# 8, App. AK).

Petitioner's claim of newly discovered evidence is not cognizable in a federal habeas petition. Petitioner alleges that the trial court erred by summarily denying his claim, which is solely a matter within the province of the state court. Petitioner has not framed his claim as a federal constitutional violation. See 28 U.S.C. §2254(a); Swarthout v. Cooke, 131 S.Ct. 859, 861 (2011) ("The habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.") (internal quotations and citations omitted).

Moreover, absent a cognizable federal constitutional claim, federal habeas relief is not warranted on a claim of newly discovered evidence. Herrera v. Collins, 506 U.S. 390, 400 (1993) ("'[T]he existence of merely newly discovered evidence relevant to the guilt of a sate prisoner is not a ground for relief on federal habeas corpus' . . . [because] federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact.") (citations omitted); Swindle v. Davis, 846 F.2d 706, 707 (11th Cir. 1988) (federal habeas relief denied where petitioner presented evidence not previously known to prosecutors at trial that someone else committed the crime at issue).

Finally, as to the merits, the trial court's denial of Petitioner's claim was not contrary to or involved an unreasonable

application of clearly established federal precedent. See Williams v. Taylor, 529 U.S. 362 (2000). In Florida, in order for a conviction to be set aside on the basis of newly discovered evidence, two requirements must be met: (1) the evidence "must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known [of it] by the use of diligence"; (2) the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial. Jones v. State, 709 So. 2d 512, 521 (Fla. 1998) (citing Torres-Arboleda v. Dugger, 636 So. 2d 1321, 1324-25 (Fla. 1994). As to this second prong, the more appropriate standard to apply in this case is the standard for withdrawal of pleas after sentencing; a defendant must prove that "the withdrawal is necessary to correct a manifest injustice. Scott v. State, 629 So. 2d 888, 890 (Fla. 4th DCA 1993); see also Williams v. State, 316 So. 2d 267 (Fla. 1975).

The United States Supreme Court has equated manifest injustice to a defendant proving actual innocence. Roy v. Wainwright, 151 So. 2d 825, 828 (Fla. 1963). A defendant is required to produce "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial" for a claim of actual innocence to be considered. House v. Bell, 547 U.S. 518, 537 (2006) (quoting Schlup v. Delo, 513 U.S. 298, 324 (1995)). Moreover, that new evidence must establish that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt" in light of all of the available evidence. Id. at 537, (quoting Schlup, 513 U.S. at 327). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).

As to the first prong, the trial court made the finding that the facts as alleged by Luis Lamadrid could have known by the use of diligence:

> The defendant could have obtained the new evidence with due diligence as the defendant knew Mr. Lamadrid was his neighbor and had spoken with Mr. Lamadrid prior to the incident. See Affidavit attached to Defendant's Motion. If this was the case the Defendant would have known that his neighbor was a witness or possibly a witness to the incident. There is no probability that this is newly discovered evidence as the defendant could have requested his attorney speak with his neighbor, Mr. Lamadrid prior to pleading guilty in the instant case.

(DE# 8, App. AF).

As to the second requirement, Petitioner's "newly discovered evidence" would not result in manifest injustice or actual innocence under the federal standard. Lamadrid made his observations on February 2, 2010, however, according to the arrest affidavits and the information filed in the instant case, the aggravated stalking charges arose from incidents occurring on January 8th and February 10, 2010. The January 8th conduct was based on telephone calls to the victim and the February 10th conduct was premised on conduct occurring inside the vehicle.

Moreover, Lamadrid stated that, at 7:00 or 7:30 in the morning, he saw Petitioner and the victim leave to take the children to school, they returned a few hours later and engaged only in a verbal argument. Ultimately, he "did not hear or see the Defendant strike or assault Ms. Martinez in any way." Even if Lamadrid's statement is taken as true, it does not follow that a strike or assault did not occur, only that Lamadrid did not observe one. See Oscar v. State, 45 So. 3d 885, 886 (Fla. 3d DCA 2010)

(newly discovered evidence that witness to defendant's arrest did not see police retrieve a gun from defendant's person was not of such a nature that it would probably produce an acquittal of the charge of possession of a firearm by a convicted felon; witness's alleged failure to see officers find and remove a gun from defendant's person did not mean that defendant was not armed or that the firearm was not seized by law enforcement).

Furthermore, it cannot be said that a manifest injustice occurred or that Petitioner is actually innocent where the victim had testified during the trial, and the trial court found a factual basis for the plea, based on what it heard during the portion of the case that was tried immediately prior to Petitioner taking the plea. (DE# 8, App. H, 11). In other words, at most, Petitioners "newly discovered evidence" would merely amount to impeachment evidence which would not entitle Petitioner to habeas relief.

Parilla has not shown himself entitled to federal habeas corpus relief. The state court's affirmance on direct appeal is not in conflict with clearly established federal law or based on an unreasonable determination of the facts, and therefore the state appellate court's result should not be disturbed. 28 U.S.C. §2254(d)(1); Williams v. Taylor, supra.

## VII. Evidentiary Hearing

To the extent Petitioner requests an evidentiary hearing on any or all of the claims raised in this federal petition, such request should be denied. As noted by the Supreme Court in Cullen v. Pinholster, _____ U.S. ___, ___, 131 S.Ct. 1388, 1398 (2011), "review under §2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Where,

24

as here, the Court has already determined that habeas relief is barred by §2254(d) because the state courts reasonably decided petitioner's claims on direct appeal and/or in postconviction proceedings, no amount of new evidence in support of the underlying claims can impact the result.

## VIII. <u>Certificate of Appealability</u>

As amended effective December 1, 2009, §2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. §2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rules Governing §2254 Proceedings, Rule 11(b), 28 U.S.C. foll. §2254.

After review of the record, Petitioner is not entitled to a certificate of appealability. "A certificate of appealablilty may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To merit a certificate of appealability, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. <u>Slack v. McDaniel</u>, 529 U.S. 473, 478, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). <u>See also</u> <u>Eagle v. Linahan</u>, 279 F.3d 926, 935 (11th Cir. 2001). Because the claims presented are clearly without merit, Petitioner cannot satisfy the *Slack* test. <u>Slack</u>, 529 U.S. at 484.

As now provided by Rules Governing §2254 Proceedings, Rule 11(a), 28 U.S.C. foll. §2254: "Before entering the final order, the

court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.


IX. <u>Recommendations</u>


Based upon the foregoing, it is recommended that the petition for writ of habeas corpus be denied and no certificate of appealability issue.


SIGNED this 16th day of December, 2014.

_____
UNITED STATES MAGISTRATE JUDGE


cc:  George L. Parilla, <u>Pro</u> <u>Se</u>
     DC# 408055
     Mayo Correctional Institution Annex
     Inmate Mail/Parcels
     8784 US Highway 27 West
     Mayo, FL 32066

     Shayne R Burnham
     Office of the Attorney General
     Criminal Appeals
     441 Brickell Avenue
     Suite 650
     Miami, FL 33131